J. CHRISTOPHER JACZKO (SBN 149317)
JACOB K. POORMAN (SBN 262261)
PROCOPIO, CORY, HARGREAVES &
 SAVITCH LLP
12544 High Bluff Drive, Suite 400
San Diego, CA 92130
Telephone: 858.720.6300
Facsimile: 619.235.0398
Email:  chris.jaczko@procopio.com
Email:  jacob.poorman@procopio.com

Attorneys for Plaintiff
SMTC CORPORATION

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SMTC Corporation, a Delaware corporation,<br><br>              Plaintiff,<br><br>v.<br><br>APT ELECTRONICS, a California corporation,<br><br>              Defendant. | Case No. 8:23-cv-672<br><br>**COMPLAINT FOR**<br><br>**(1)  BREACH OF WRITTEN CONTRACT;**<br>**(2)  QUANTUM MERUIT;**<br>**(3)  GOODS SOLD AND DELIVERED;**<br>**(4)  OPEN BOOK ACCOUNT; AND**<br>**(5)  ACCOUNT STATED**<br><br>**DEMAND FOR JURY TRIAL**<br><br>[Amount in Controversy Exceeds $75,000] |

Plaintiff SMTC Corporation (hereafter, "Plaintiff" or "SMTC") for its Complaint against Defendant APT Electronics (hereafter, "Defendant" or "APT") alleges as follows:

## **THE PARTIES**

1.     Plaintiff is a Delaware corporation with its principal place of business located in Melbourne, Florida.  Founded in 1985, Plaintiff is a mid-size provider of end-to-end electronics manufacturing services ("EMS"), including product design and

engineering services, printed circuit board assembly, production, enclosure, cable assembly, precision metal fabrication, systems integration and comprehensive testing services, configuration to order, build to order and direct order fulfillment. Plaintiff's wide array of services extend over the entire electronic product life cycle from the development and introduction of new products through to the growth, maturity and end-of-life product phases. Plaintiff has facilities in the United States, Canada, Mexico and China.

2.    Plaintiff is informed and believes, and based thereon alleges, that Defendant is a California corporation with its principal place of business located in Anaheim, California. Plaintiff is informed and believes, and based thereon alleges, that Defendant is an electronics contract manufacturer that markets itself as specializing in surface mount, thru-hole and final box build assembly, with an integrated MRP system supporting the management of turnkey and customer consigned materials.

### JURISDICTION AND VENUE

3.    Although this action involves a claim for breach of contract and common counts under California law, this Court nevertheless has subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1332(a)(2) in that there is complete diversity of citizenship between the parties and the amount in controversy is in excess of $75,000, exclusive of interest and costs. As alleged hereinabove, this action involves a controversy between Plaintiff, which is a Delaware corporation with its principal place of business located in Melbourne, Florida, and Defendant, which is a California corporation with its principle place of business located in Anaheim, California.

4.    This Court has personal jurisdiction over the Defendant because Defendant is incorporated in this state and maintains its principal place of business in this judicial district. Further, the claims asserted herein arose from Defendant's activities in this state and judicial district.

5.      Venue is proper, *inter alia*, pursuant to 28 U.S.C. §§ 1391 in this case because, on information and belief, Defendant maintains its principle place of business in this judicial district and a substantial part of the acts, events, or omissions giving rise to the claims asserted herein occurred in this judicial district.

## GENERAL ALLEGATIONS

*Background*

6.      On or about December 18, 2018, Plaintiff and Defendant entered into a written agreement called the Contract Manufacturing Services Agreement (the "MSA"). A true and correct copy of the MSA is attached hereto as Exhibit 1 and is incorporated herein by this reference as though set forth in full.

7.      Pursuant to the MSA Defendant agreed to purchase and Plaintiff agreed to provide certain services and materials in connection with the manufacture of certain products Defendant deemed necessary to support the requirements of its end customer, Inogen, Inc. ("Inogen").

8.      Based upon the parties' prior dealings Plaintiff understood that Defendant had been contracted by Inogen to manufacture and supply components for Inogen's end products.

9.      Plaintiff is informed and believes, and based thereon alleges, that Inogen is a corporation organized and existing under the laws of the state of Delaware with its principal place of business located in Orange County, California. Plaintiff is further informed and believes, and based thereon alleges, that Inogen is engaged in the business of developing and marketing portable oxygen concentrators for use by individuals suffering from certain chronic respiratory conditions who need supplemental oxygen to deal with their health conditions.

10.      Plaintiff is informed and believes, and based thereon alleges, that prior to entering into the MSA with Plaintiff, Defendant entered into a Contract Manufacturing Services Agreement with Inogen pursuant to which Defendant agreed to provide to Inogen services and materials in connection with the manufacture of certain Inogen

131146-00000002/6839933.1                                                          8:23-CV-672

products in consideration for which Inogen would pay Defendant.

11.   Plaintiff is informed and believes, and based thereon alleges, that Defendant has commenced an action against Inogen claiming that Inogen owes Defendant in excess of $3,329,445.53 under the terms of the Contract Manufacturing Services Agreement between Defendant and Inogen.  (see, *APT Electronics, Inc. v. Inogen, Inc.,* Orange County Superior Court, Case No. 30-2023-01311329-CU-BC-WJC.)

***The MSA Between Plaintiff and Defendant Sets Up a Preferred Supplier Resource for Defendant to Aid Defendant in Meeting its Obligations to Inogen***

12.   Under the terms of the MSA, Defendant contracted with Plaintiff to have Plaintiff perform manufacturing services on Defendant's behalf in connection with Defendant's performance of its contractual obligations to Inogen.   More specifically, Defendant agreed to designate Plaintiff as a preferred supplier and to purchase a percentage of Defendant's/Inogen's requirements for the Products and Services listed in Appendix A to the MSA.  (Ex. 1, § 2.3).

13.   More specifically, Defendant agreed that "[d]uring each of the first 2.5 years of the term of this Agreement, [Defendant] shall purchase per quoted contract quantities [its] (and its 'Affiliates') requirements for Products and Services . . . from [Plaintiff] (the "Minimum Requirements") based on price, quality, and delivery performance."  (Ex. 1, § 15.10)

14.   The term "Products" is defined in the MSA to mean "APT Electronics's products manufactured by SMTC hereunder."  (Ex. 1, §1.26)

15.   The term "Services" is defined in the MSA to mean "the provision by SMTC of all required parts, components and other materials as listed in the Bill of Material together with all assembly services *[sic]* including but not limited to board level assembly, in-circuit and functional testing, packaging and/or shipping of finished Product."  (Ex. 1, § 1.29)

16.   Under the terms of the MSA, Defendant would on a quarterly basis

provide to Plaintiff a rolling forecast of its estimated monthly requirements of Products covering the ensuing 12 months of demand, or a so-called "Demand Statement" as used in the MSA. (Ex. 1, § 14.1).

17.    Defendant's quarterly Demand Statement would include, among other things, "Blanket Purchase Orders" and "Purchase Orders" authorizing Plaintiff to purchase components and materials required to support Defendant's forecast of required Products as well as to fill so-called "Kanban"[1] quantities in the finished goods inventory. (Ex. 1, § 14.1.1).

18.    Plaintiff would then be entitled to use the Blanket Purchase Orders and Purchase Orders and Forecasts (defined in the MSA as "a Product purchase projection provided by APT and passed through its end customer Inogen") to place orders on the supply chain to cover the material lead times and Plaintiff's manufacturing lead times. (Ex. 1, § 14.2)  The MSA makes plain that the Forecasts authorize Plaintiff to order material in accordance with the Forecasts and that "[Defendant] *assumes liability for such material*." (*Id.,* emphasis added)

19.    Defendant issued various Purchase Orders to Plaintiff calling for the manufacture and delivery of specific Products, quantities and lead times.  The parties agreed in the MSA that once a Purchase Order was accepted, Plaintiff was "obligated to manufacture and deliver to [Defendant] and [Defendant] will be firmly and irrevocably obligated to buy from [Plaintiff] the Products set forth in the Purchase Orders." (Ex. 1, § 14.3)

20.    In the MSA Defendant agreed to pay all invoiced amounts on a Net 55 days from date of invoice.  (Ex. 1, § 15.5)

21.    Plaintiff agreed to invoice Defendant for Equipment or Products when they were shipped to Defendant and in the case of Services pursuant to the terms

---

[1] The term Kanban refers to an inventory control system for improving scheduling and reducing inventories used in just-in-time manufacturing and can be utilized for more visibility into the needs for purchasing inventory from external suppliers.  The parties provided for the management of a Kanban system in Section 19.1

established by Plaintiff's quotations for Services accepted by Defendant.  (Ex. 1, §
15.6)

22.    Consistent with Plaintiff's status as a preferred supplier of Defendant and
the overall management and implementation of a just-in-time and flexible
manufacturing service for Defendant, the parties agreed to set up a program
management team comprised of a program manager appointed by each company and
to ensure that the parties established and conducted regular meetings to track progress,
performance and actions under the relationship.  Further, the parties agreed to hold
quarterly business review meetings in which project teams and senior management of
both companies would review the status of the relationship and any performance
issues.  (Ex. 1, § 25.1-4)

***Defendant Fails to Pay Invoices for Products and Services***

23.    As contemplated by the MSA Plaintiff commenced providing Services
and manufacturing Products in accordance with the Forecast, Blanket Purchase Orders
and Purchase Orders issued by Defendant.  For a period of time, Defendant paid
Plaintiff's invoices.  However, commencing in approximately late 2021, invoices
began to not be paid in full as required under the express terms of the MSA in breach
of Defendant's obligations to Plaintiff, including as follows:

| Invoice Date | Invoice No. | Amount Invoiced | Amount Past Due |
|---|---|---|---|
| 11/15/2021 | 10221849 | $  25,590.00 | $       88.80 |
| 11/18/2021 | 10221850 | $    9,553.60 | $     492.80 |
| 11/19/2021 | 10221851 | $    2,559.00 | $     132.00 |
| 11/19/2021 | 10221852 | $  17,486.50 | $     902.00 |
| 11/22/2021 | 10221853 | $  15,354.00 | $     792.00 |
| 11/23/2021 | 10221855 | $  14,159.80 | $     730.40 |
| 4/1/2022 | 10221979 | $    7,768.53 | $    7,768.53 |
| 4/1/2022 | 10221980 | $  71,652.00 | $  71,652.00 |
| 4/1/2022 | 10221981 | $ 343,103.00 | $ 343,103.80 |

| | | | |
|---|---|---|---|
| 7/1/2022 | 10222002 | $1,494,129.88 | $1,494,129.88 |
| 11/25/2022 | 10222020 | $ 582,303.82 | $ 582,303.82 |
| 12/2/2022 | 10222022 | $ 294,651.10 | $ 294,651.10 |

24.    The foregoing invoices reflect a past due and owing amount totaling $2,796,642.08.

25.    Despite Plaintiff's demands to Defendant to pay the foregoing amount Defendant has failed and refused to pay.

26.    Further, despite Plaintiff's demands Defendant has failed and refused to pay Plaintiff the sum of $226,602.00 for "non-cancelable, non-returnable materials or NCNR" as defined in the MSA to include parts, components and other materials for which suppliers, manufacturers or distributors have limited or restricted rights of return, rescheduling or cancellation, the parts that cannot be returned or canceled because schedule changes have exceeded allowable time limits for returning them or canceling an order is not permitted because packaging has been opened or partially opened. (Ex. 1, § 1.23)  Pursuant to Section 16.8 of the MSA, Defendant agreed to be "liable for any NCNR".

27.    As a result, Defendant owes Plaintiff the total sum of $3,023,244.08, which sum is comprised of $2,796,642.08 for Products and Services and $226,602.00 for materials that are NCNR.  Plaintiff has made repeated demands of Defendant for payment of the foregoing, but Defendant has failed and refused to make payment.

## FIRST CLAIM FOR RELIEF

### BREACH OF CONTRACT

28.    Plaintiff reasserts, realleges and incorporates herein by this reference as though set forth in full each and every allegation set forth in Paragraphs 1 through 27 of this Complaint.

29.    Plaintiff and Defendant entered into the MSA as alleged hereinabove.

30.    Plaintiff performed all of conditions, covenants and promises required of it in accordance with the terms and conditions of the MSA, including providing

131146-00000002/6839933.1                                                        8:23-CV-672

Products and Services specified thereunder, except to the extent Plaintiff's performance has otherwise been waived or excused.

31.   Plaintiff's invoices for its work under the MSA total the sum of $3,023,244.08.  Defendant breached its obligations under the MSA by, among other things, failing and refusing to pay the amounts owed to Plaintiff as reflected in the invoices issued by Plaintiff that remain due, owing and outstanding.

32.   Defendant's failure to pay the amount due and owing under Plaintiff's invoices constitutes a material breach of Defendant's obligations under the MSA.

33.   Plaintiff has repeatedly made demand of Defendant to make good on its promises to pay Plaintiff for the Products and Services provided to Defendant under the MSA.  Implicit in the MSA is a covenant of good faith and fair dealing obligating Defendant to act toward Plaintiff in good faith, to deal fairly with Plaintiff and to not do anything that might deprive Plaintiff of the expectations and benefits of the MSA as well as to do everything that the MSA presupposes in order to accomplish its purpose.  As alleged hereinabove, Defendant breached its implied covenant of good faith and fair dealing under the MSA.

34.   As a direct and proximate result of Defendant's breach of contract by failing and refusing to pay amounts due and owing to Plaintiff, Plaintiff has suffered damages in an amount subject to proof at trial, but in an amount of at least $3,023,244.08, plus prejudgment interest.

**<u>SECOND CLAIM FOR RELIEF</u>**

**COMMON COUNT -- QUANTUM MERUIT**

35.   Plaintiff reasserts, realleges and incorporates herein by this reference as though set forth in full each and every allegation set forth in Paragraphs 1 through 27 of this Complaint.

36.   Defendant requested that Plaintiff provide goods and manufacturing services for the benefit of Defendant.

37.   Within two years prior to filing this action, Plaintiff provided or made

available valuable goods and provided valuable manufacturing services to Defendant pursuant to Defendant's requests.

38.    Defendant has not paid Plaintiff for the good and manufacturing services provided pursuant to Defendant's requests.

39.    The reasonable value of the goods and manufacturing services provided to Defendant by Plaintiff that remains due, owing and unpaid is at least $3,023,244.08, plus prejudgment interest.

## THIRD CLAIM FOR RELIEF

### COMMON COUNT – GOODS SOLD AND DELIVERED

40.    Plaintiff reasserts, realleges and incorporates herein by this reference as though set forth in full each and every allegation set forth in Paragraphs 1 through 27 of this Complaint.

41.    Within the last two years, Defendant became indebted to Plaintiff for the goods and manufacturing services provided to Defendant and for which Defendant promised to pay Plaintiff in an amount to be proven at trial, but which is at least $3,023,244.08, plus prejudgment interest.

42.    Despite Plaintiff's repeated demands for payment, neither the whole nor any part of the sum Defendant owes to Plaintiff pursuant to goods and services sold and delivered to Defendant has been paid and there is now due, owing and unpaid a sum to be proven at trial, but which is at least $3,023,244.08, plus prejudgment interest.

## FOURTH CLAIM FOR RELIEF

### COMMON COUNT – OPEN BOOK ACCOUNT

43.    Plaintiff reasserts, realleges and incorporates herein by this reference as though set forth in full each and every allegation set forth in Paragraphs 1 through 27 of this Complaint.

44.    Pursuant to the MSA, Plaintiff and Defendant engaged in a series of business transactions whereby Plaintiff provided or made available to Defendant

valuable goods and manufacturing services and Defendant was supposed to pay Plaintiff for the value of those goods and manufacturing services.

45.    Plaintiff kept an account of the debits (amounts incurred by Defendant for goods and manufacturing services Plaintiff provided) and credits (payments made by Defendant) related to the transactions between them.

46.    Within the last two years, Defendant became indebted to Plaintiff on an open book account stated in writing for money due in an amount to be proven at trial but which is at least $3,023,244.08 for goods supplied and manufacturing services provided at Defendant's request and for which Defendant agreed it was indebted to Plaintiff.

47.    Despite Plaintiff's repeated demands for payment, neither the whole nor any part of the sum Defendant owes to Plaintiff pursuant to this open book account has been paid and there is now due, owing and unpaid a sum to be proven at trial, but which is at least $3,023,244.08, plus prejudgment interest.

## FIFTH CLAIM FOR RELIEF

## COMMON COUNT – ACCOUNT STATED

48.    Plaintiff reasserts, realleges and incorporates herein by this reference as though set forth in full each and every allegation set forth in Paragraphs 1 through 27 of this Complaint.

49.    Pursuant to the MSA, Plaintiff and Defendant engaged in a series of transactions whereby Plaintiff provided or made available valuable goods and manufacturing services to Defendant and Defendant was supposed to pay Plaintiff for the value of those goods and manufacturing services.

50.    Plaintiff kept an account of the debits (amounts incurred by Defendant for goods and manufacturing services Plaintiff provided) and credits (payments made by Defendant) related to the transactions between them.

51.    Defendant, through its words and conduct, including issuing forecasts and purchase orders and accepting the goods and manufacturing services provided by

Plaintiff as well as Plaintiff's invoices without objection, agreed that it owes and promised to pay the sum of $3,023,244.08 to Plaintiff.

52.     Despite Plaintiff's demand for payment, Defendant has failed and refused to pay the amount owed to Plaintiff under this account.  To date, Defendant owes Plaintiff the sum of at least $3,023,244.08 for goods and manufacturing services provided, plus prejudgment interest.

**SIXTH CLAIM FOR RELIEF**

**B&P CODE SECTION 17200 – UNFAIR COMPETITION**

53.     Plaintiff reasserts, realleges and incorporates herein by this reference as though set forth in full each and every allegation set forth in Paragraphs 1 through 27 of this Complaint.

54.     Defendant's conduct as alleged above – specifically its breach of contract and refusal to pay Plaintiff for the goods and services that Plaintiff provided and that Defendant agreed to pay for – constitutes unfair competition.

55.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered an injury in fact because Plaintiff has provided at least $3,023,244.08 worth of goods and services to Defendant for which it has not been paid.

56.     The harm caused by Defendant's conduct is greater than the utility of its conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court enter judgment in its favor and against Defendant as follows:

A.     For compensatory damages in an amount to be established according to proof at trial, but in the amount of at least $3,023,244.08;

B.     For restitution in an amount to be established according to proof at trial;

C.     For prejudgment interest at the maximum extent allowed by law;

D.     For attorney's fees to the extent permitted by law;

E.     For costs of suit incurred herein; and

F.    For such other and further relief as the Court may deem just and proper.

### **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38,  Plaintiff SMTC Corporation hereby demands a jury trial for all issues so triable.


DATED: April 19, 2022                    PROCOPIO, CORY, HARGREAVES & SAVITCH LLP


By:  /s/ J. Christopher Jaczko
J. Christopher Jaczko
Jacob K. Poorman

Attorneys for Plaintiff
SMTC CORPORATION